## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

**BRIAN DWAYNE JONES,**

      **Plaintiff,**

**v.**                                **Case No.**  7:17cv531

**BOARD OF VISITORS |**
**VIRGINIA POLYTECHNIC**
**INSTITUTE AND STATE**
**UNIVERSITY |**
**COMMONWEALTH OF VIRGINIA,**

**SERVE:**
**Timothy D. Sands**
**Office of the President**
**Burruss Hall, Suite 210**
**800 Drillfield Drive**
**Blacksburg, VA  24061**

      **Defendant.**

## COMPLAINT

The above-named Plaintiff, Brian Dwayne Jones ("Mr. Jones" or "Plaintiff"), by counsel, states as his Complaint against Defendant Board of Visitors | Virginia Polytechnic Institute and State University | Commonwealth of Virginia ("Virginia Tech" or "Defendant"), the following:

## I. JURISDICTION

1. This Court has jurisdiction over this matter as it arises from the federal questions presented by Title VII, as amended by the Civil Rights Act of 1991 and as

1

codified under 42 U.S.C. §2000e *et seq.* ("Title VII").  *See generally* 28 U.S.C. § 1331; 28 U.S.C. §1343(a)(4).

2.  Venue is appropriate, as the acts and/or omissions of Virginia Tech from which the causes of action arise occurred in the town of Blacksburg, Virginia, which is located within the County of Montgomery, and which is within the Western District of Virginia, Roanoke Division.  *See* 28 U.S.C. §1391(b)(2).

3.  Due to its contacts within the Commonwealth of Virginia, Virginia Tech avails itself to the jurisdiction of this Court.

4.  Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 26, 2016.   Plaintiff received a Dismissal and Notice of Rights from the U.S. Department of Justice Civil Rights Division dated September 1, 2017, attached as **EXHIBIT A**.  Plaintiff files suit within ninety (90) days of receipt of that Dismissal and Notice of Rights.

## II. THE PARTIES

5.  Mr. Jones, a male who identifies his sexual orientation as homosexual, is a resident of the Town of Newport, Virginia, and is employed by Virginia Tech.

6. Virginia Tech is a state university and, thus, a state agency, of the Commonwealth of Virginia.  Virginia Tech's main campus, administration, Board of Visitors, officers, attorneys, and Director / President are all located in the Town of Blacksburg, Virginia (Montgomery County).

### III.  FACTUAL ALLEGATIONS

7.  Mr. Jones was hired by Virginia Tech in or about August of 2000 as a switchboard supervisor, and has worked on a consistent, full-time basis for Virginia Tech for more than seventeen (17) years.

8.  During his employment with Virginia Tech, Mr. Jones' work performance has always been excellent, and consistently met or exceeded Virginia Tech's expectations. Mr. Jones has always received positive work performance evaluations, and never has received a disciplinary action.

9.  In or about May of 2015, Mr. Jones was promoted and given additional Information Technology Helpdesk ("IT Helpdesk") job responsibilities, including supervising both the switchboard and helping supervise the operations of the IT Helpdesk.

10. At the time, Mr. Jones was considered a supervisor within the Customer Support section of the Virginia Tech Operations Center ("VTOC").

11. Joyce Landreth is the VTOC Program Director, and Mr. Jones' direct supervisor. Pat Rodgers, Chief Administrative Officer/Chief Financial Officer, is Ms. Landreth's supervisor. William Dougherty, Ms. Rodgers' supervisor, is the VTOC Executive Director.

### Mr. Jones Open About Sexual Orientation

12. Mr. Jones has never hidden his sexual orientation from his colleagues and supervisors at Virginia Tech, and has introduced and/or referenced his male partner

as his "boyfriend" or "partner" to his co-workers both at the office and socially.

13. Mr. Jones also has attended Diversity Development Institute classes offered by Virginia Tech, and openly discussed his sexual orientation during these sessions.

14. Upon information and belief, all of Mr. Jones' colleagues and supervisors, including Ms. Landreth, Ms. Rodgers, and Mr. Dougherty, were aware of Mr. Jones' sexual orientation.

15. In particular, in or about June 2015, Mr. Jones discussed a health issue involving his former male partner with Ms. Landreth, and specifically referenced his [Mr. Jones'] sexual orientation during the conversation.  Upon information and belief, Ms. Landreth shared this information with Ms. Rodgers and/or Mr. Dougherty.

**Mr. Jones Demoted | No Legitimate Explanation Provided**

16. Shortly after this discussion with Ms. Landreth, in or about November 2015, Mr. Jones was advised by Ms. Landreth, Ms. Rodgers, and Human Resources Director Dan Joyce that the VTOC was being "reorganized."

17. Despite his excellent work performance, Mr. Jones was informed that he would be demoted to a "Customer Support Representative," effective immediately, thus stripping him of his supervisory roles and requiring him to report to one of three "Team Leader" positions within the department.

18. Mr. Jones immediately asked Ms. Rodgers, Ms. Landreth, and Mr. Dougherty why he was demoted, but received conflicting responses.

19. Ms. Rodgers advised Mr. Jones – inaccurately – that the demotion was a

4

"lateral" move, and also advised Mr. Jones that he had "weak technical skills."

20. Ms. Landreth could not provide Mr. Jones with a single example of his alleged "weak technical skills," despite Mr. Jones' multiple requests for an explanation.

21. Mr. Dougherty advised Mr. Jones that he [Mr. Jones] would receive a development plan relating to his demotion, but Mr. Jones never received one. Indeed, Mr. Jones even requested a development plan on multiple occasions as he was utterly perplexed as to how his "technical skills" were "weak".

22. Indeed, Virginia Tech awarded Mr. Jones a rating of "Strong Performance" for "Job Knowledge and Technical Competence" in his 2016 performance review, thus illustrating that Mr. Jones' technical skills are excellent.

23. Mr. Jones' new position was not a lateral move, as his job duties changed significantly and he lost all supervisory authority within his department.

24. In December of 2015, Mr. Jones' former position, now called "VTOC Supervisor," remained vacant. Upon information and belief, the original means of filling the position was by appointment but was later advertised.

25. Despite his considerable qualifications, Mr. Jones was neither considered, nor hired, for this position.

26. In addition, upon information and belief, two other qualified colleagues, both also male and homosexual, were neither considered, nor hired, for the VTOC Supervisor position.

27. On or around March 30, 2016, Ms. Landreth and Mr. Jones' new supervisor,

Team Leader Jennifer Gay, advised Mr. Jones without explanation that they were officially "tabling" his diminished supervisory roles.

28. Ms. Landreth and Ms. Gay then proceeded to humiliate Mr. Jones by reviewing all of the job duties and expectations of his position as a Customer Support Representative – a position Mr. Jones supervised prior to his demotion.

29. On March 31, 2016, Mr. Jones sent a written inquiry to Ms. Gay, Ms. Landreth, and Mr. Dougherty, again requesting a detailed explanation of his alleged "weak technical skills."  Mr. Jones also advised that he never received the above-referenced development plan and, accordingly, requested one.

30. Mr. Dougherty, VTOC Executive Director and Mr. Jones' ultimate supervisor, immediately advised Mr. Jones in an email that he [Mr. Dougherty] was "no longer involved" in the matter.

31. On April 4, 2016, Ms. Landreth responded and advised that she did not believe a development plan was needed.

32. At no time did Mr. Jones' supervisors provide him with any concrete examples of his alleged deficient technical skills.

### Mr. Jones Complains | Alleges Demotion Result of Discrimination

33. On April 11, 2016, Mr. Jones provided his supervisors with a written complaint stating as follows: "I was denied my role as a supervisor and demoted because of my sexual orientation.  I spoke with Joyce [Landreth] about my orientation in the summer of 2015 and only a few months later, I was told that my position would be reorganized

in the office.  I've seen others passed up for promotion who were in a similar position as myself and I believe I'm being similarly treated."

## Jones Suffers Retaliation Due to Complaint

34. On May 31, 2016, Ms. Gay called Mr. Jones into a conference room and informed Mr. Jones that he would be required to take an undesirable weekend "call" schedule beginning on or about June 11, 2016.

35. The initial summer weekend call schedule, posted and reviewed by Mr. Jones on or about April 27, 2016, did not include Mr. Jones.  Upon information and belief, Mr. Jones' supervisors altered the weekend call schedule in retaliation for Mr. Jones' complaints regarding sex discrimination in the workplace.

36. On June 1, 2016, Ms. Landreth invited Mr. Jones to join a Virginia Tech Information Technology Advisory Council.  Mr. Jones accepted the invitation, but less than two weeks later, was rejected from the Advisory Council via email.   Upon information and belief, Virginia Tech rescinded its offer to include Mr. Jones on the Advisory Council in retaliation for his complaints regarding sex discrimination in the workplace.

37. On or around June 7, 2017, Mr. Jones again requested detail regarding his alleged "weak technical skills".  Once again, Mr. Jones did not receive a satisfactory response.

38. On June 20, 2016, Mr. Jones wore a "Nike Be True" t-shirt to work.  The referenced logo is commonly understood to mean support of the homosexual or gay

community, and as a reference to "gay pride."

39. Ms. Gay walked by Mr. Jones' desk several times that day but, at approximately 2:00PM, Ms. Gay and Mr. Jones passed each other in the hallway where Ms. Gay paused and took a long look at Mr. Jones' t-shirt. Ms. Gay then walked on without comment. The interaction was uncomfortable. Upon information and belief, Ms. Gay disapproved of Mr. Jones' attire due to the above-referenced logo supporting the gay community.

40. After Mr. Jones' shift had ended, at 8:06PM on this same date, Mr. Jones received a communication from Ms. Gay chastising him for arriving for his shifts on time but for not being logged into the Virginia Tech Avayya phone system exactly at the start of his shift. Ms. Gay indicated that it was her perspective that Mr. Jones was "late" and this was "totally unacceptable."

41. It is common knowledge that it takes 2-3 minutes to log on to the phone system and all necessary applications needed to take calls. Despite the attendance policy cited by Ms. Gray, neither she nor Mr. Jones' previous supervisor, prior to his demotion, considered the 2-3 minute log on time as "late" until June 20, 2016.

42. Indeed, upon information and belief, it is common practice for individuals to arrive at their work stations exactly at the appointed shift time and not several minutes before hand. Upon information and belief, this practice is acceptable and no other employees have ever been chastised or disciplined for this practice.

43. It is also worth noting that supervisors receive a daily phone log in and log out

8

report and Ms. Gray never raised this issue with Mr. Jones until June 20, 2016.

44. This was the first time that Mr. Jones had ever been advised, either verbally or in writing, that this practice was "unacceptable."

45. Upon information and belief, Ms. Gay targeted Mr. Jones for this minor tardiness issue in retaliation for his choice of t-shirt and/or for his prior complaints regarding sex discrimination in the workplace.

**Additional Retaliation | Jones Qualified But Not Hired for Position**

46. On May 9, 2017, Mr. Jones applied for an open Special Assistant for State Government Relations position with Virginia Tech, a position for which he was more than qualified.

47. Despite Mr. Jones' qualifications and years of excellent service to Virginia Tech, Mr. Jones' application was immediately rejected.  Upon information and belief, Virginia Tech failed to hire, or even consider, Mr. Jones for the open Special Assistant position in retaliation for his sexual orientation and/or his complaints regarding sex discrimination in the workplace.

48. Virginia Tech unlawfully discriminated and retaliated against Mr. Jones for revealing his sexual orientation, and engaging in the protected activity of complaining about workplace sex discrimination, all in violation of Title VII, which forbids any employment discrimination based upon sex.

49. Virginia Tech violated federal law by permitting a work environment to exist that punishes, retaliates against, and prejudices a victim of discrimination.

50. Any reasons cited by Virginia Tech for its decisions regarding Mr. Jones were pretextual, as the circumstances of Virginia Tech's actions raise a reasonable inference of unlawful discrimination and retaliation based upon Mr. Jones' disclosure of his sexual orientation and related complaints concerning discrimination in the workplace.

51. While the United States Court of Appeals for the Fourth Circuit has not yet explicitly extended Title VII protections to sexual orientation discrimination, other federal courts, as well as the EEOC, have explicitly ruled that Title VII protects against discrimination based on sexual orientation:

- ***Baldwin v. Dep't of Transportation*, EEOC DOC 0120133080, 2015 EEOPUB LEXIS 1905, 2015 WL 4397641, at \*5-\*6 (July 15, 2015)):** The EEOC ruled that discrimination based on sexual orientation is a form of sex discrimination prohibited by Title VII, despite the fact that Title VII does not specifically include sexual orientation or gender identity in its list of protected bases.  The EEOC found that the "question for purposes of Title VII coverage of a sexual orientation claim is the same as any other Title VII case involving allegations of sex discrimination—whether the agency has 'relied on sex-based considerations' or 'take[n] gender into account' when taking the challenged employment action," and that "sexual orientation is inherently a 'sex-based consideration,' and an allegation of discrimination based on sexual orientation is necessarily an allegation of sex discrimination under Title VII."

- ***Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 79-80 (1998):** The Supreme Court held that same-sex harassment is sex discrimination under Title VII. The Court noted that, while same-sex harassment was "assuredly not the principal evil Congress was concerned with when it enacted Title VII . . . statutory prohibitions often go beyond the principal evil [they were passed to combat] to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed. Title VII prohibits 'discriminat[ion] . . . because of . . . sex.' [This] . . . must extend to [sex-based] discrimination of any kind that meets the statutory requirements."

- ***Price Waterhouse v. Hopkins*, 490 U.S. 228, 250 (1989):** The Supreme Court recognized that employment discrimination based on sex stereotypes (e.g., assumptions and/or expectations about how persons of a certain sex should dress, behave, etc.) is unlawful sex discrimination under Title VII. Defendant had denied Plaintiff a promotion in part because other partners at the firm felt that she did not act as woman should act.  The Court found that this constituted evidence of sex discrimination as "[i]n the . . . context of sex stereotyping, an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender."  The Court further explained that Title VII's "because of sex" provision strikes at the "entire spectrum of disparate treatment of men and women resulting from sex stereotypes."

- ***Hively v. Ivy Tech Cmty, Coll. of Ind.*, 853 F.3d 339, 341 (7th Cir. 2017):**  The Court, citing the EEOC's *Baldwin* decision, found that Title VII's prohibition on sex discrimination incorporates a prohibition on sexual orientation discrimination, overruling its contrary prior precedent.

- ***Boutillier v. Hartford Pub. Schs.*, 221 F. Supp. 3d 255, 267 (D. Conn. 2016):**  The Court ruled that Title VII protects individuals who are discriminated against on the basis of sex because of their sexual orientation, and stated that "straightforward statutory interpretation and logic dictate that sexual orientation cannot be extricated from sex; the two are necessarily intertwined in a manner that, when viewed under the Title VII paradigm set forth by the Supreme Court, place sexual orientation discrimination within the penumbra of sex discrimination."

- ***EEOC v. Scott Med. Health Ctr., P.C.*, 217 F. Supp. 3d 834, 841-42 (W.D. Pa. 2016):** "Title VII's 'because of sex' provision prohibits discrimination on the basis of sexual orientation. . . .  There is no more obvious form of sex stereotyping than making a determination that a person should conform to heterosexuality. As the EEOC states, [d]iscriminating against a person because of the sex of that person's romantic partner necessarily involves stereotypes about 'proper' roles in sexual relationship-that men are and should only be sexually attracted to women, not men."   A line between sex discrimination and sexual orientation discrimination is "a distinction without a difference. Forcing an employee to fit into a gendered expectation-whether that expectation involves physical traits, clothing, mannerisms or sexual attraction-constitutes sex stereotyping and . . . violates Title VII."  Such discrimination, "based upon nothing more than the aggressor's view of what it means to be a man or a woman, is exactly the evil Title VII was designed to eradicate."

- ***Winstead v. Lafayette Cty. Bd. of Cty. Comm'rs*, 197 F. Supp. 3d 1334, 1347 (N.D. Fla. 2016):** In denying an employer's motion to dismiss an

11

employee's Title VII sex discrimination claim alleging discrimination based on sexual orientation or perceived sexual orientation, the court explained that it found persuasive the sex stereotyping rationale articulated in the EEOC's *Baldwin* decision and observed: "To hold that Title VII's prohibition on discrimination 'because of sex' includes a prohibition on discrimination based on an employee's homosexuality or bisexuality or heterosexuality does not require judicial activism or tortured statutory construction. It requires close attention to the text of Title VII, common sense, and an understanding that '[i]n forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes."

- ***Isaacs v. Felder***, 143 F. Supp. 3d 1190, 1193 (M.D. Ala.  2015): Granting the employer's motion for summary judgment on plaintiff's Title VII claim due to insufficient evidence of discriminatory intent on the facts of the case, the court nevertheless explicitly rejected arguments that sexual orientation discrimination cannot be challenged under Title VII: "This court agrees instead with the view of the Equal Employment Opportunity Commission that claims of sexual orientation-based discrimination are cognizable under Title VII."

- ***Koren v. Ohio Bell Tel. Co.***, 894 F. Supp. 2d 1032, 1037 (N.D. Ohio 2012): Denying Defendant's motion for summary judgment where Plaintiff alleged his supervisor discriminated against him based on sex stereotypes because he is married to a man and took his husband's last name, the court held: "That *is* a claim of discrimination because of sex."

- ***Heller v. Columbia Edgewater Country Club***, 195 F. Supp. 2d 1212, 1224 (D. Or. 2002): In a Title VII sex harassment case brought by a lesbian employee who was subjected to negative comments about her sex life, the court stated that the belief that men or women should only be attracted to or date persons of the opposite sex constitutes a gender stereotype. "If an employer subjected a heterosexual employee to the sort of abuse allegedly endured by [Plaintiff] – including numerous unwanted offensive comments regarding her sex life-the evidence would be sufficient to state a claim for violation of Title VII. The result should not differ simply because the victim of the harassment is homosexual."

52. While agency interpretations and out-of-Circuit case law are not controlling on

courts, they are sources to which courts may look for guidance.[1]  The EEOC's clear

---

[1] Agency interpretations incorporate an agency's specialized experience with the issue, the broader information and investigation available to the agency, and the "value of uniformity in its administrative

position on this issue is supported by the cases discussed above, and Plaintiff respectfully requests that this Court follow the EEOC's lead and extend Title VII protections to Plaintiff and other victims of sexual orientation discrimination.

## IV.  COUNTS

### COUNT I:  DISPARATE TREATMENT PURSUANT TO TITLE VII

53. Mr. Jones incorporates by reference herein the preceding paragraphs of this Complaint.

54. Mr. Jones is a homosexual male, and protected from sex discrimination and disparate treatment based upon sex, by Title VII.

55. Virginia Tech discriminated against Mr. Jones by treating him differently from and less preferably than similarly situated heterosexual male employees, and subjecting him to other differential treatment on the basis of his sex.

56. Virginia Tech violated federal law by permitting a work environment to exist that was discriminatory to Mr. Jones, and other homosexual male Virginia Tech employees, based upon their sex.

57. Throughout his employment with Virginia Tech, Mr. Jones has performed his work at a satisfactory level and met or exceeded Virginia Tech's legitimate business expectations.

---

and judicial understandings of what a national law requires."  Thus, they are entitled to respect or deference to the extent that they have the "power to persuade."  *Shipbuilders Council of Am., Inc. v. United States Coast Guard*, 578 F.3d 234, 241, 245 (4th Cir. 2009) citing *Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944).

58. Virginia Tech would not have demoted and/or failed to hire Mr. Jones, and/or taken the other discriminatory and retaliatory actions against him but for Mr. Jones' sex.  Alternatively, Mr. Jones' sex was a motivating factor in Virginia Tech's actions.

59. Because the actions of Virginia Tech supervisory employees were taken within the scope of their employment, Virginia Tech is responsible for their actions based upon the doctrine of *respondeat superior*.

60. As a direct and proximate result of the actions of Virginia Tech, Mr. Jones has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

61. At all times material hereto, Virginia Tech engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Mr. Jones so as to support an award of punitive damages.

62. The above-described acts by Virginia Tech constitute discrimination and disparate treatment in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, as codified under 42 U.S.C. §§2000e, *et seq*. ("Title VII").

### COUNT II:  DISPARATE IMPACT PURSUANT TO TITLE VII

63. Mr. Jones incorporates by reference herein the preceding paragraphs of this Complaint.

64. Mr. Jones is a homosexual male, and protected from sex discrimination and disparate treatment based upon sex, by Title VII.

65. Virginia Tech discriminated against Mr. Jones by treating him differently from and less preferably than similarly situated heterosexual male employees and subjecting him to other differential treatment on the basis of his sex.

66. Virginia Tech violated federal law by permitting a work environment to exist that was discriminatory to Mr. Jones, and other homosexual male Virginia Tech employees, based upon their sex.

67. Virginia Tech's policies, practices, and/or procedures have had a disparate impact on Mr. Jones and others with respect to the terms and conditions of his and others' employment.  Specifically, upon information and belief, there is a culture and unwritten policy at Virginia Tech that supports discrimination and retaliation against homosexual employees.

68. Virginia Tech would not have demoted and/or failed to hire Mr. Jones, and/or taken the other discriminatory and retaliatory actions against him but for Mr. Jones' sex.  Alternatively, Mr. Jones' sex was a motivating factor in Virginia Tech's actions.

69. Because the actions of Virginia Tech supervisory employees were taken within the scope of their employment, Virginia Tech is responsible for their actions based upon the doctrine of *respondeat superior*.

70. As a direct and proximate result of the actions of Virginia Tech, Mr. Jones has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

71. At all times material hereto, Virginia Tech engaged in a discriminatory practice

or practices with malice or reckless indifference to the federally protected rights of Mr. Jones so as to support an award of punitive damages.

72. The above-described acts by Virginia Tech constitute discrimination and a disparate impact to Mr. Jones in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, as codified under 42 U.S.C. §§2000e, *et seq.* ("Title VII").

## COUNT III: SEX DISCRIMINATION PURSUANT TO TITLE VII

73. Mr. Jones incorporates by reference herein the preceding paragraphs of this Complaint.

74. Mr. Jones is a homosexual male and protected from sex discrimination by Title VII.

75. Virginia Tech discriminated against Mr. Jones by treating him differently from and less preferably than similarly situated heterosexual male employees and subjecting him to other discriminatory and differential treatment on the basis of his sex.

76. Virginia Tech violated federal law by permitting a work environment to exist that was discriminatory to Mr. Jones, and other homosexual male Virginia Tech employees, based upon their sex.

77. Directly prior to his demotion, Mr. Jones engaged in the protected conduct of disclosing his sexual orientation to his supervisors and colleagues.

78. Virginia Tech would not have demoted Mr. Jones and/or failed to hire Mr.

16

Jones, and/or subjected Mr. Jones to discrimination, and/or retaliated against Mr. Jones and/or taken the other discriminatory actions against Mr. Jones, but for Mr. Jones' sex.  Alternatively, Mr. Jones' sex was a motivating factor in Virginia Tech's actions.

79. Prior to Mr. Jones's demotion, he was performing his work at a satisfactory level and meeting or exceeding Virginia Tech's legitimate business expectations.

80. At all times relevant, Virginia Tech retained substantial control over the context in which the discriminatory conduct occurred.

81. Because the actions of Virginia Tech supervisory employees were taken within the scope of their employment, Virginia Tech is responsible for their actions based upon the doctrine of *respondeat superior*.

82. As a direct and proximate result of the actions of Virginia Tech, Mr. Jones has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

83. At all times material hereto, Virginia Tech engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Mr. Jones so as to support an award of punitive damages.

84. The above-described acts by Virginia Tech constitute sexual discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, as codified under 42 U.S.C. §§2000e, *et seq*. ("Title VII").

17

## COUNT IV:  FAILURE TO HIRE PURSUANT TO TITLE VII

85. Mr. Jones incorporates by reference herein the preceding paragraphs of this Complaint.

86. Mr. Jones is a gay male, and protected from sex discrimination and disparate treatment based upon sex, by Title VII.

87. Virginia Tech discriminated against Mr. Jones by refusing to consider him for multiple open positions, including a VTOC Supervisor Position and a Special Assistant for State Government Relations position, despite his experience and qualifications.

88. Virginia Tech's failure to hire Mr. Jones occurred under circumstances that raise a reasonable inference of unlawful discrimination based upon Mr. Jones' sex.

89. Virginia Tech would not have failed to hire Mr. Jones or taken the other discriminatory actions against him but for Mr. Jones' sex.

90. Because the actions of Virginia Tech supervisory employees were taken within the scope of their employment, Virginia Tech is responsible for their actions based upon the doctrine of *respondeat superior*.

91. As a direct and proximate result of Virginia Tech's actions, Mr. Jones has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

92. At all times material hereto, Virginia Tech engaged in unlawful or retaliatory practices with malice or reckless indifference to the federally protected rights of Mr. Jones so as to support an award of punitive damages.

93. The above-described acts by Virginia Tech constitute sexual discrimination, in the form of a failure to hire claim, in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, as codified under 42 U.S.C. §§2000e, *et seq*. ("Title VII").

## <u>COUNT V:  RETALIATION PURSUANT TO TITLE VII</u>

94. Mr. Jones incorporates by reference herein the preceding paragraphs of this Complaint.

95. Mr. Jones is a homosexual male, and protected from sex discrimination and disparate treatment based upon sex, by Title VII.

96. During Mr. Jones' employment with Virginia Tech, he has performed his work at a satisfactory level and met or exceeded Virginia Tech's legitimate business expectations.

97. At all times material hereto, Virginia Tech had an obligation to maintain a work environment that was not charged discrimination and retaliation and hostile to Mr. Jones and other homosexual males.

98. Virginia Tech violated federal law by permitting a work environment to exist that was discriminatory and retaliatory to Mr. Jones, and other homosexual male Virginia Tech employees, based upon their sex.

99. After his demotion, Mr. Jones engaged in the protected conduct of complaining about workplace discrimination, and was subsequently targeted and retaliated against for making these complaints.

100.     Mr. Jones was demoted and targeted within short temporal proximity to, and in retaliation for, complaining about workplace discrimination.

101.     Virginia Tech would not have targeted Mr. Jones or taken the other retaliatory actions against Mr. Jones, but for Mr. Jones' sex.

102.     Because the actions of Virginia Tech supervisory employees were taken within the scope of their employment, Virginia Tech is responsible for their actions based upon the doctrine of *respondeat superior.*

103.     As a direct and proximate result of Virginia Tech's actions, Mr. Jones has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

104.     At all times material hereto, Virginia Tech engaged in unlawful or retaliatory practices with malice or reckless indifference to the federally protected rights of Mr. Jones so as to support an award of punitive damages.

105.     The above-described acts by Virginia Tech constitute retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, as codified under 42 U.S.C. §§2000e, *et seq*. ("Title VII").


WHEREFORE, Plaintiff Brian Dwayne Jones prays for judgment against Defendant Board of Visitors | Virginia Polytechnic Institute and State University | Commonwealth of Virginia for equitable relief, punitive and/or liquidated damages, together with prejudgment interest, and for costs and attorneys' fees, and for such

20

other and further relief as may be just and equitable.


TRIAL BY JURY IS DEMANDED.

Respectfully submitted,

/s/ Thomas E. Strelka
Thomas E. Strelka, Esq. (VSB# 75488)
L. Leigh R. Strelka, Esq. (VSB # 73355)
STRELKA LAW OFFICE, PC
Warehouse Row
119 Norfolk Avenue, S.W., Suite 330
Roanoke, VA  24011
Tel:  540-283-0802
thomas@strelkalaw.com
leigh@strelklaw.com

*Counsel for Plaintiff*

21