# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **BRIAN DWAYNE JONES,** ) | |
| ) | |
| **Plaintiff,** ) | Civil Action No. 7:17-cv-531 |
| ) | |
| **v.** ) | |
| ) | |
| **VIRGINIA POLYTECHNIC INSTITUTE** ) | By: Hon. Robert S. Ballou |
| **AND STATE UNIVERSITY, et al.,** ) | United States Magistrate Judge |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION[1]

Plaintiff Brian Dwayne Jones ("Jones") filed this action against Defendants Virginia Polytechnic Institute and State University ("Virginia Tech") and the Commonwealth of Virginia for sex discrimination and retaliation. Defendants moved to dismiss Jones's claims under Fed. R. Civ. P. Rule 12(b)(6) and 12(b)(1) for failure to state a claim and lack of subject-matter jurisdiction. Dkt. No. 4. Because Defendants filed an answer before filing their Rule 12(b) motion, I construe the motion as a Fed. R. Civ. P. Rule 12(c) motion for judgment on the pleadings. I grant Defendants' motion in part, deny it in part, and grant the Plaintiff leave to amend the complaint.

---

[1] This case is before me by consent under 28 U.S.C. § 636(c).

# I. FACTUAL BACKGROUND

Jones began working at Virginia Tech as a switchboard supervisor in August 2000. Compl. ¶¶ 7, 12, Dkt. No. 1. He received positive performance evaluations for his work, and in May 2015, received additional job responsibilities, including supervising the switchboard and helping to supervise the operations of the information technology helpdesk. Id. ¶¶ 8-9. Jones was then considered to be a supervisor within the customer support section of the Virginia Tech Operations Center ("VTOC"). Id. ¶ 10. Jones reported to Joyce Landreth, who in turn reported to Pat Rodgers and ultimately to William Dougherty, the VTOC executive director. Id. ¶ 11.

Jones is openly gay, and throughout his employment at Virginia Tech, has referred to or introduced his male partner to coworkers. Id. ¶ 12. In June 2015, Jones referred to his sexual orientation when speaking to Landreth about his former male partner's health condition. Id. ¶ 15. Jones believes that Landreth, Rodgers, and Dougherty were aware of his sexual orientation and that Landreth told Rodgers and Dougherty about her June 2015 conversation with Jones. Id. ¶¶ 14-15.

In approximately November 2015, the VTOC human resources director informed Jones that VTOC would undergo a reorganization. Id. ¶ 16. Virginia Tech then reassigned Jones to the position of customer support representative, which required Jones to report to one of three team leaders and did not involve any supervisory responsibilities. Id. ¶ 17. When Jones learned of the reassignment, he asked Rodgers, Landreth, and Dougherty why they had demoted him. Id. ¶ 18. Rodgers characterized the reassignment as a lateral move, but also claimed that Jones had "'weak technical skills.'" Id. ¶ 19. Jones asked Landreth about Rodgers' criticism, but Landreth could not provide an example of Jones's weak technical skills. Id. ¶ 20. Jones also discussed the

reassignment with Dougherty, who promised that Jones would receive a development plan related to the reassignment, but Jones never received such a plan. Id. ¶ 21.

Jones believes that his former position became the VTOC supervisor position, which remained open at the end of 2015 when Jones began his new role as a customer support representative. Id. ¶ 24. Jones alleges that Virginia Tech failed to consider or hire him for the supervisor position and similarly failed to consider or hire two other qualified homosexual male employees for the position. Id. ¶¶ 25-26.

Jones continued to question his supervisors about his reassignment throughout the spring of 2016. On March 30, 2016, Jones's new supervisor, Team Leader Jennifer Gay ("Gay"), and Landreth told Jones that they would no longer discuss his claims of "diminished supervisory roles." Id. ¶ 27. On April 11, 2016, Jones submitted the following written complaint to his supervisors: "'I was denied my role as a supervisor and demoted because of my sexual orientation. I spoke with Joyce [Landreth] about my orientation in the summer of 2015 and only a few months later, I was told that my position would be reorganized in the office. I've seen others passed up for promotion who were in a similar position as myself and I believe I'm being similarly treated.'" Id. ¶ 33. On May 31, 2016, Gay informed Jones that he would have to work an "undesirable" weekend call schedule starting in mid-June 2016. Id. ¶ 34. On June 1, 2016, Landreth invited Jones to join a Virginia Tech information technology advisory council ("IT council"). Id. ¶ 36. On June 7, 2016, Jones again requested a more detailed explanation for his weak technical skills. Id. ¶ 37. About a week later, Virginia Tech rescinded its offer to include Jones on the IT council. Id. ¶ 36.

On June 20, 2016, Jones arrived to work wearing a t-shirt with the logo, "Nike Be True," which signals support for the LGBT community. Id. ¶ 38. That afternoon, Gay saw Jones in the

hallway, and she paused and stared at Jones's t-shirt. Id. ¶ 39. The interaction made Jones feel uncomfortable. Id. Later that day, Gay informed Jones that he had arrived late to work and that she found such conduct to be "'totally unacceptable.'" Id. ¶ 40. Jones had arrived to work when his shift began, but took two to three minutes to log into the phone system. Id. ¶¶ 40-41. He had never been reprimanded for that conduct before and believed that he had followed the common practice in the office. Id. ¶¶ 41-42, 44.

Almost a year later, on May 9, 2017, Jones applied for an open position as a special assistant for state government relations at Virginia Tech (the "government relations position"). Id. ¶ 46. He alleges that "he was more than qualified" for the position, but despite his "qualifications and years of excellent service to Virginia Tech," his application was "immediately rejected." Id. ¶¶ 46-47.

Jones then filed a complaint against Virginia Tech with the Equal Employment Opportunity Commission ("EEOC"). The EEOC has since provided Jones with a Notice of Right to Sue. Dkt. No. 1-1. On November 29, 2017, Jones filed this action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. asserting various claims of discrimination and retaliation by Virginia Tech based upon Jones's sexual orientation.

## II. STANDARD OF REVIEW

Where, as here, Defendants submitted an answer before filing their Rule 12(b)(6) motion, "the Defendants' motion should be viewed as a Rule 12(c) motion for judgment on the pleadings raising the defense of failure to state a claim upon which relief can be granted." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). The Rule 12(c) motion is subject to the same standard of review as a Rule 12(b)(6) motion. Id.; PETA v. U.S. Dep't of Agric., 861 F.3d 502, 506 (4th Cir. 2017). Thus, I may grant the Defendants' Rule 12(c) motion only "if, after

4

accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." PETA, 861 F.3d at 506 (internal quotation marks omitted); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007) (requiring a complaint to contain facts sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face"). Although an employee need not "plead facts that constitute a prima facie case [under Title VII] in order to" state a claim for relief, "factual allegations must be enough to raise a right to relief above the speculative level." McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 585 (4th Cir. 2015) (alterations and internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### III. ANALYSIS

Title VII prohibits an employer from discriminating against an individual "because of . . . sex." 42 U.S.C. § 2000e-2. Title VII further makes it unlawful for an employer to retaliate against an employee for engaging in a protected activity. See id. § 2000e-3. Defendants argue that Jones's Complaint fails to allege facts that plausibly support a Title VII claim under any of the theories it advances, and that any amendment to the Complaint would be futile because Title VII does not recognize sexual orientation as a protected class. I address both arguments below.

#### A. Title VII and Sexual Orientation Discrimination Claims

Defendants claim that Jones cannot state a Title VII claim for discrimination based on sexual orientation. Defendants rely upon Wrightson v. Pizza Hut of Am., Inc., 99 F.3d 138, 143 (4th Cir. 1996), where the Fourth Circuit Court of Appeals stated in dicta that "Title VII does not

5

afford a cause of action for discrimination based upon sexual orientation." See also Hopkins v. Balt. Gas & Elec. Co., 77 F.3d 745, 751-52 (4th Cir. 1996) (ruling that same-sex sexual harassment may be a basis for a Title VII claim, but noting that "Title VII does not prohibit conduct based on the employee's sexual orientation, whether homosexual, bisexual, or heterosexual. Such conduct is aimed at the employee's sexual orientation and not at the fact that the employee is a man or a woman"). Several district courts within this circuit have relied on that dictum to dismiss Title VII claims for sexual orientation discrimination. See, e.g., Snyder v. Ohio Elec. Motors, Inc., No. 1:17-cv-00134-MR-DLH, 2018 WL 1353124, at *2 (W.D.N.C. Mar. 15, 2018) (relying in part on plaintiff's apparent concession that Fourth Circuit precedent requires dismissal of Title VII claims based on sexual orientation); Hinton v. Va. Union Univ., 185 F. Supp. 3d 807, 817 (E.D. Va. 2016); Dudley v. 4-McCar-T, Inc., No. 7:09-CV-00520, 2011 WL 1742184, at *4 (W.D. Va. May 4, 2011) (citing Wrightson and Simonton v. Runyon, 232 F.3d 33, 35-36 (2d Cir. 2000)). Further, the Fourth Circuit recently cited Wrightson in an unpublished case. Murray v. N.C. Dep't of Pub. Safety, 611 F. App'x 166 (4th Cir. 2015) (per curiam) (citing Wrightson in footnote to four-sentence opinion affirming district court decision).

Defendants also note that circuit courts have previously unanimously held that sexual orientation discrimination claims are not cognizable under Title VII. See Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 259 (1st Cir. 1999) ("Title VII does not proscribe harassment simply because of sexual orientation."); Simonton v. Runyon, 232 F.3d 33, 36 (2d Cir. 2000) ("Simonton has alleged that he was discriminated against not because he was a man, but because of his sexual orientation. Such a claim remains non-cognizable under Title VII."); Bibby v. Phila. Coca Cola Bottling Co., 260 F.3d 257, 261 (3d Cir. 2001) ("Title VII does not prohibit discrimination based on sexual orientation."); Blum v. Gulf Oil Corp., 597 F.2d 936,

938 (5th Cir. 1979) ("Discharge for homosexuality is not prohibited by Title VII."); Vickers v. Fairfield Med. Ctr., 453 F.3d 757, 762 (6th Cir. 2006) ("[S]exual orientation is not a prohibited basis for discriminatory acts under Title VII."); Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc., 224 F.3d 701, 704 (7th Cir. 2000) ("[H]arassment based solely upon a person's sexual preference or orientation (and not on one's sex) is not an unlawful employment practice under Title VII."); Williamson v. A.G. Edwards & Sons, Inc., 876 F.2d 69, 70 (8th Cir. 1989) ("Title VII does not prohibit discrimination against homosexuals."); Rene v. MGM Grand Hotel, Inc., 305 F.3d 1061, 1063-64 (9th Cir. 2002) ("[A]n employee's sexual orientation is irrelevant for purposes of Title VII. It neither provides nor precludes a cause of action for sexual harassment."); Medina v. Income Support Div., 413 F.3d 1131, 1135 (10th Cir. 2005) ("Title VII's protections, however, do not extend to harassment due to a person's sexuality. . . . Congress has repeatedly rejected legislation that would have extended Title VII to cover sexual orientation.") (internal quotations omitted); Evans v. Georgia Reg. Hosp., 850 F.3d 1248 (11th Cir. 2017) cert. denied, 138 S. Ct. 557 (Dec. 11, 2017) (declining to recognize a claim for sexual orientation discrimination under Title VII).

However, "legal doctrine evolves," Zarda v. Altitude Express, Inc., 883 F.3d 100, 107 (2d Cir. 2018), and there has been a recent trend in United States Supreme Court decisions to expansively define sex discrimination under Title VII. That trend generally began with Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57 (1986), in which the Supreme Court held that sex discrimination includes sexual harassment in the workplace. The Court then determined that sex discrimination includes discrimination based on an employee's failure to conform to gender norms. Price Waterhouse v. Hopkins, 490 U.S. 228 (1989) (permitting Title VII claims on the basis of sex stereotyping such as the stereotype that a female employee cannot be aggressive). In

7

Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75 (1998), the Supreme Court ruled that sex discrimination encompasses same-sex sexual harassment claims. The rationale in Oncale supports an expansive reading of "because of . . . sex" in Title VII:

> We see no justification in the statutory language or our precedents for a categorical rule excluding same-sex harassment claims from the coverage of Title VII. As some courts have observed, male-on-male sexual harassment in the workplace was assuredly not the principal evil Congress was concerned with when it enacted Title VII. But statutory prohibitions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed.

Id. at 79.

Likewise, in 2015 the EEOC held, for the first time, that "sexual orientation is inherently a sex-based consideration, accordingly an allegation of discrimination based on sexual orientation is necessarily an allegation of sex discrimination under Title VII." Baldwin v. Foxx, EEOC Decision No. 0120133080, 2015 WL 4397641, at *5 (July 15, 2015). Since the 2015 EEOC decision, the Second and Seventh Circuit Courts of Appeal have ruled that sexual orientation discrimination is "a subset of sex discrimination" and is protected under Title VII. See Zarda v. Altitude Express, Inc., 883 F.3d 100, 131 (2d Cir. 2018); Hively v. Ivy Tech Cmty. Coll. of Ind., 853 F.3d 339, 343 (7th Cir. 2017). Conversely, the Eleventh Circuit recently issued two opinions relying upon binding precedent to find that discrimination based on sexual orientation is not protected by Title VII. See Evans v. Ga. Reg. Hosp., 850 F.3d 1248 (11th Cir. 2017) (declining to recognize a claim); Bostock v. Clayton County Bd. of Comm'rs, 723 Fed. App'x 964 (11th Cir. 2018). The conflicting Eleventh Circuit Bostock and Seventh Circuit Zarda decisions are currently pending before the United States Supreme Court on petitions for certiorari. Thus, there is now a split in the previously consistent legal doctrine finding that Title

VII does not protect against discrimination based upon sexual orientation. There further exists a strong possibility of binding Supreme Court precedent on this issue in the near future.

Analyzing the case before me, I question Defendants' assertion that the Fourth Circuit's statements in <u>Wrightson</u> and <u>Hopkins</u>, which are dicta, are binding in this case. I further question whether the Fourth Circuit's statements in those cases are consistent with the current state of the law, given that they were made prior to the most recent Supreme Court, EEOC and circuit court decisions on this issue. However, even if I assume for the purposes of this opinion that discrimination based upon sexual orientation is prohibited by Title VII, I find that Jones has not provided sufficient facts to state a claim in this case, as explained more fully below. Accordingly, I will grant Defendants' motion to dismiss without prejudice, allow Jones leave to amend his Complaint, and defer ruling on the issue of whether I am bound by the <u>Wrightson</u> dicta, and whether there has been, or should be, a shift in the previous case law holding that sexual orientation is not protected by Title VII.

**B. Failure to State a Claim**

Defendants argue that Jones's Complaint fails to allege facts that plausibly support a Title VII claim for: (1) disparate treatment and sex discrimination, (2) disparate impact, (3) failure to hire, and (4) retaliation. Assuming that Jones belongs to a protected class based upon his sexual orientation, I find that he has not pled sufficient facts to assert a plausible cause of action.

        **1.**        **Disparate Treatment and Sex Discrimination (Counts I and III)**

The prima facie case for a disparate treatment claim under Title VII requires proof of four elements: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." <u>Coleman v. Md. Ct. of Appeals</u>, 626 F.3d 187, 190 (4th Cir. 2010). Plausibly

9

alleging "discriminatory intent, in disparate treatment cases, 'is critical, although it can in some situations be inferred from the fact of differences in treatment.'" See Barnett v. Tech. Int'l, Inc., 1 F. Supp. 2d 572, 576 (E.D. Va. 1998) (quoting Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977)).

Assuming Jones belongs to a protected class, the parties agree that Jones sufficiently alleged satisfactory job performance but disagree over whether the Complaint identifies an adverse employment action. "[T]he typical requirements for a showing of an 'adverse employment action'" include "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." Boone v. Goldin, 178 F.3d 253, 255 (4th Cir. 1999), abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). A reassignment can be an adverse employment action if "the reassignment had some significant detrimental effect on [the plaintiff.]" Id. at 256. Viewing Jones's Complaint in the light most favorable to him, I can plausibly infer that his reassignment was an adverse employment action because he alleges that he had certain supervisory responsibilities before the reassignment and no supervisory responsibilities after the reassignment, and because he received a new job title. See Compl. ¶¶ 16-17.

However, the Complaint does not allege a sufficient factual basis to infer that Virginia Tech intended to treat Jones differently because of his sex. See Barnett, 1 F. Supp. 2d at 576 (recognizing the requirement of discriminatory intent in discriminatory treatment cases). Although discriminatory intent can be inferred from differences in treatment, "a complaint that merely alleges a co-worker is similarly situated without providing facts to substantiate that similarity fails to state a claim for discrimination." Booth v. Cty. Exec., 186 F. Supp. 3d 479, 486 (D. Md. 2016) (citing Coleman, 626 F.3d at 190-91).

Here, the Complaint alleges in a conclusory fashion that Virginia Tech treated Jones differently than it treated heterosexual male employees. Compl. ¶¶ 36, 55. The Complaint does not identify any similarly situated male heterosexual employees for comparison. Nor, it follows, does the Complaint allege any facts about those would-be comparators, such as their qualifications, their positions before and after the "reorganization," or their number. The Complaint similarly fails to allege such facts about members of Jones's purported class. Accordingly, I have no basis for comparing members of a protected class with members outside that class to determine whether the treatment of the two was disparate.

Further, the minimal facts alleged in the Complaint do not make it plausible to infer that Virginia Tech intended to discriminate against Jones because of his sexual orientation. Jones alleges that he worked at Virginia Tech as an openly gay man for 15 years without being disciplined. He now seeks to connect a conversation with a supervisor about his male partner to the reorganization of an entire department five months later and a string of isolated incidents that followed over the course of the next two years. The Complaint alleges no factual basis for making that connection, such as evidence that Landreth or another supervisor had discriminatory animus, or information that the supervisors discussed Jones's male partner when determining how to reorganize VTOC. Jones has, at most, alleged an unsubstantiated conclusion that his reassignment was related to his sexual orientation. The pleading standards set by Iqbal/Twombly require more than conclusory unsubstantiated allegations. Jones's claims of disparate treatment are speculative. Thus, I conclude that Jones failed to state a claim in Count I.

2. **Disparate Impact (Count II)**

While disparate treatment claims target an employer's discriminatory intent, disparate impact claims focus on employment practices that produce discriminatory results. Carpenter v.

11

Va. Dep't of Transp., No. 5:06CV00035, 2006 WL 3314436, at *3 (W.D. Va. Nov. 14, 2006); see Int'l Bhd. of Teamsters, 431 U.S. at 335 n.15. "To establish a prima facie case of disparate impact discrimination under Title VII, a plaintiff must show that the facially neutral employment practice had a significantly discriminatory impact." Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 265 (4th Cir. 2005) (internal quotation marks omitted).

"The policy or practice contemplated by disparate impact doctrine consists of more than the mere occurrence of isolated or accidental or sporadic discriminatory acts, having reference instead to an employer's standard operating procedure[,] the regular rather than the unusual practice." Wright v. Nat'l Archives and Records Serv., 609 F.2d 702, 712 (4th Cir. 1979) (internal quotation marks omitted). Courts have recognized that "[d]iscriminatory impact cannot be established where you have just one isolated decision." Tyree v. GCA Servs. Grp., Inc., No. 7:17CV00328, 2018 WL 342066, at *3 (W.D. Va. Jan. 9, 2018) (quoting Reidt v. Cty. of Trempealeau, 975 F.2d 1336, 1341 (7th Cir. 1992)). A plaintiff must allege either the existence of "numerical or statistical evidence demonstrating disparate impact" or "sufficient factual detail of a series of discrete episodes of the contested employment practice in order to raise a plausible inference that [the employment practice] has a discriminatory impact on [the protected group]." McCoy v. Canterbury, No. 3:10-0368, 2010 WL 5343298, at *5 (S.D.W. Va. Dec. 20, 2010).

Jones argues that two policies implemented by Virginia Tech result in a disparate impact: the VTOC attendance policy, and an informal policy of demoting or failing to promote homosexual male employees. With regard to the VTOC attendance policy, the Complaint identifies only one occasion on which Jones was disciplined under that policy. See Compl. ¶ 44. It further alleges that "[u]pon information and belief . . . no other employees have ever been chastised or disciplined" under the VTOC attendance policy for arriving at their work stations at

12

the start of their shift and taking a few minutes to log into the phone system. Id. ¶ 42. Because Jones's Complaint alleges only a single, isolated incident and emphasizes that the incident was unusual, he has not plausibly alleged that VTOC's attendance policy has a disparate impact on homosexual male employees.

Second, Jones argues that Virginia Tech has an informal policy of demoting or failing to promote homosexual male employees. Not only is this policy not facially neutral, it has not been described in sufficient factual detail to plausibly infer that it has a discriminatory impact on homosexual male employees. Jones does not indicate that statistical evidence would aid his claim, nor does he identify a series of episodes that show a disparate impact on homosexual male employees. The Complaint simply states that "two other qualified colleagues, both also male and homosexual, were neither considered, nor hired, for the VTOC Supervisor position." Compl. ¶ 26. That allegation does not provide a sufficient factual basis to raise a plausible inference that such a policy existed; nor does the Complaint allege the impact of the policy on homosexual male employees compared to heterosexual male employees. Accordingly, Jones fails to state a claim for disparate impact.

### 3. Failure to Hire (Count IV)

The elements of a prima facie case for failure to hire are: (1) membership in a protected class; (2) application to the position in question; (3) qualifications for that position; and (4) a failure to hire under circumstances giving rise to an inference of unlawful discrimination. Anderson, 406 F.3d at 268. While a plaintiff need not establish a prima facie case of failure to hire, the plaintiff must "allege facts sufficient to claim that the reason [his employer] failed to hire [him] was because of [his] . . . sex." See McCleary-Evans, 780 F.3d at 585.

Jones argues that Virginia Tech discriminated against him because of his sex when it failed to hire him for either the VTOC supervisor position or the government relations position. Defendants argue that Jones's failure to allege that Virginia Tech hired an individual from outside the protected class for either position proves fatal to his claim.

I agree with Defendants under the circumstances of this case. The Complaint not only "does not identify the individuals who actually received the jobs for which [Jones] applied;" it "merely states, in conclusory fashion, that [plaintiff] was denied several positions for which he was allegedly qualified." See Clarke v. Va. State Univ., No. 3:15-CV-374, 2016 WL 521528, at *3 (E.D. Va. Feb. 5, 2016). "That allegation, standing alone, is insufficient to state a plausible discrimination claim." Id.; Cepada v. Bd. of Educ. of Baltimore Cty., 814 F. Supp. 2d 500, 511 (D. Md. 2011) (dismissing disparate treatment claim premised on a failure to promote because the complaint did not allege facts sufficient to establish that a similarly situated employee from outside of the protected class had been promoted to the position). Jones "can only speculate that the persons hired were not better qualified . . . or were not better suited based on experience . . . ." McCleary-Evans, 780 F.3d at 586. Jones's Complaint has therefore left open "the obvious alternative explanation that the decisionmakers simply judged those hired to be more qualified and better suited for the position[]." Id. at 588.

Moreover, the facts alleged in Jones's Complaint are merely "<u>consistent</u> with discrimination" and "do[] not alone support a <u>reasonable inference</u> that the decisionmakers were motivated by bias." Id. at 586. With regard to the VTOC supervisor position, the Complaint alleges that Jones's conversation with Landreth triggered his reassignment, but it does not allege any facts to support that connection. The Complaint does not indicate how Landreth reacted to the conversation, what happened between the conversation and the reorganization five months

14

later, or whether anyone knew that Jones wanted the VTOC supervisor position. "Only speculation can fill the gaps in [his] complaint." Id. From the facts in the Complaint, I cannot plausibly infer that Jones was demoted in November 2015 because his supervisors, who had reason to know of his sexual orientation for over a decade, were motivated by bias toward his sexual orientation.

Jones's Complaint proves similarly anemic in its allegations relating to the government relations position. The Complaint states that Jones "was more than qualified" for that position and that he had a number of "years of service." Compl. ¶¶ 46-47. Without additional allegations, I cannot plausibly infer that years of experience in a customer support or switchboard position equate to the qualifications necessary for a lobbying-type position such as the government relations position. Contrary to Jones's argument at the oral argument hearing, it is not sufficient to give the Defendants notice that Jones will argue he is qualified for the government relations position. Under Iqbal, Jones must allege facts to make that conclusion plausible before he can proceed to discovery. He has not done so. Accordingly, I conclude that the Complaint fails to state a claim for failure to hire.

### 4. Retaliation (Count V)

To establish a prima facie claim for retaliation, a plaintiff must demonstrate three elements: (1) engagement in a protected activity; (2) a materially adverse action taken by the plaintiff's employer; and (3) a causal relationship between the protected activity and the adverse action. See Burlington, 548 U.S. at 68; Foster v. Univ. of Md.-Eastern Shore, 787 F.3d 243, 250 (4th Cir. 2015). "An employee engages in a protected activity by opposing discriminatory employment practices," which include "'utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's

discrimination activities.'" Booth, 186 F. Supp. 3d at 487 (quoting Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998)). An action is materially adverse if "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington, 548 U.S. at 68 (internal quotation marks omitted). A materially adverse action does not include "those petty slights or minor annoyances that often take place at work and that all employees experience." Id. Determining "'causation, which necessarily involves an inquiry into the motives of an employer, is highly context-specific.'" Reardon v. Herring, 201 F. Supp. 3d 782, 787 (E.D. Va. 2016) (quoting Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 178 (3d Cir. 1997)). Courts may infer causation from the "temporal proximity between an employer's knowledge of protected activity and an adverse employment action." Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001). But to rely on temporal proximity alone, the proximity must be "very close." Id. at 273-74 (internal quotation marks omitted) (recognizing periods of three and four months between protected activity and adverse action as too long).

I assume for purposes of this motion that Jones engaged in a protected activity when he sent the April 11, 2016 letter, in which he complained to his supervisors that he had been demoted and passed over for the VTOC supervisor position because of his sexual orientation.[2] See Compl. ¶ 33. I also find that he sufficiently alleged a materially adverse action in stating that Virginia Tech failed to hire him for the government relations position.[3] See Booth, 186 F. Supp.

---

[2] Contrary to Jones's argument in his brief, he did not engage in protected activity when he discussed his former male partner's health problems with Landreth in June 2015. That is not oppositional activity or participation in a formal investigation, hearing, or other similar proceeding. Jones's allegation that he requested a more detailed explanation of his weak technical skills, without more, also does not qualify as protected activity.

[3] None of the other conduct identified by Jones rises to the level of a materially adverse action. Courts have recognized that "an Attendance Warning" or "verbal reprimand," like Gay's informal reprimand of Jones for tardiness, does not qualify as a materially adverse action. Wright v. Kent Cty. Dep't of Soc. Servs., No. ELH-12-3593, 2014 WL 301026, at *19 (D. Md. Jan. 24, 2014) (internal quotation marks omitted). Petty slights, like Gay

16

3d at 488 (recognizing that a demotion and similar actions would dissuade a reasonable worker from engaging in a protected activity). If Jones complained on April 11, 2016 and was not hired for the government relations position until over a year later on May 9, 2017, he cannot rely on temporal proximity alone to establish causation.[4] The Complaint does not appear to allege any additional facts that demonstrate a causal link between the April 11, 2016 letter and Virginia Tech's rejection of his application for the government relations position.

Although Jones need not establish a prima facie case to state a claim under Title VII, these facts do not permit me to plausibly infer that Virginia Tech unlawfully retaliated against Jones. Jones complained to his VTOC supervisors about sexual orientation discrimination and then over a year later was rejected by individuals reviewing applications in a different department. These facts do not make it plausible to infer that Virginia Tech retaliated against Jones for opposing discriminatory activity. Accordingly, Jones's Complaint fails to state a claim for retaliation.

### C. Leave to Amend

Rule 15(a) of the Federal Rules of Civil Procedure requires a plaintiff who has previously amended his complaint to obtain the opposing party's consent or the court's permission to amend the complaint a subsequent time. See Fed. R. Civ. P. 15(a)(2). "The court should freely give leave [to amend] when justice so requires," id., denying leave "only when the amendment would

---

staring at Jones's shirt, also do not qualify as materially adverse actions. Jones could allege a materially adverse action by including additional factual allegations about his exclusion from the IT council if those facts suggest that his exclusion hindered his professional development or training in a manner that would dissuade a reasonable employee from complaining about discrimination. See Kennedy v. Va. Polytechnic Inst. & State Univ., 781 F. Supp. 2d 297, 304 (W.D. Va. 2011). Finally, with additional facts, the allegation that Jones was required to work an undesirable weekend call schedule may amount to a materially adverse action. Phillips v. Dukes, No. PWG-17-1581, 2018 WL 835709, at *5 (D. Md. Feb. 12, 2018) (citing Burlington, 548 U.S. at 69, for proposition that a scheduling change may be a materially adverse action when additional allegations demonstrate a significant impact of the scheduling change).

[4] The gap between the April 11, 2016 letter and the other possible materially adverse actions, which occurred in June 2016, is less drastic, but may still fail to qualify as very close.

be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would [be] futile,'" Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)). "A motion to amend is futile where . . . the amended pleading would not survive a motion to dismiss" for failure to state a claim. Brown v. Winman, No. 5:15-cv-59-BO, 2016 WL 868193, at *1 (E.D.N.C. Mar. 7, 2016); see also Wootten v. Commonwealth, No. 6:14-cv-00013, 2015 WL 1943274, at *2 (W.D. Va. Apr. 29, 2015) (holding that a court should deny a motion to amend as futile if the amended complaint could not survive a motion to dismiss for failure to state a claim). For the reasons provided above, I will allow Jones leave to amend his Complaint, and address the issue of whether sexual orientation discrimination claims are protected by Title VII if Jones provides sufficient facts to state a claim.

## IV. CONCLUSION

For the foregoing reasons, the court will, by separate order, **GRANT** in part and **DENY** in part Defendants' Motion to Dismiss (Dkt. No. 4). Further, pursuant to Jones's request during oral argument, the court will **GRANT** Jones leave to amend the Complaint within ten (10) days of the date of this order.

Entered: September 24, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge